## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. KENNETH L. BOEHM

[Misc. (BV) No. 24, September Term, 1980.]

*Decided May 28, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Walter D. Murphy, Jr., Assistant Bar Counsel,* for petitioner.

*Karl G. Feissner,* with whom were *Feissner & Beckman* on the exceptions, for respondent.

COLE, J., delivered the opinion of the Court.

Once again we shall try to make indelibly clear that, ordinarily, the sanction for misappropriation of a client's funds by an attorney is disbarment.

Pursuant to the provisions of Maryland Rule BV 9, Bar Counsel filed a petition with us on behalf of the Attorney Grievance Commission seeking disciplinary action against Kenneth Lee Boehm, a member of the Bar of this Court since

1970. The misconduct complained of took place while Boehm was acting as attorney for the estate of William Trent Johns during the years 1972 through 1976.

In its petition, Bar Counsel alleged violations of Disciplinary Rules 1-102 (A) (1), (3), (4), (5), and (6); DR 6-101 (A) (1), (2), and (3); DR 7-101 (A) (1), (2), and (3); DR 7-102 (A) (5); and DR 9-102 (A) (1), (2), (B) (1), (2), (3), and (4).[1] The trial

---

1. DR 1-102 (A) Misconduct

  (A)  A lawyer shall not:
- (1) Violate a Disciplinary Rule
- (2) Circumvent a Disciplinary Rule through actions of another
- (3) Engage in illegal conduct involving moral turpitude
- (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation
- (5) Engage in conduct that is prejudicial to the administration of justice
- (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 6-101 Failing to Act Competently

  (A)  A lawyer shall not:
- (2) Handle a legal matter without preparation adequate in the circumstances
- (3) Neglect a legal matter entrusted to him.

DR 7-101 Representing a Client Zealously

  (A)  A lawyer shall not intentionally:
- (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 (B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
- (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
- (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B).

DR 7-102 Representing a Client Within the Bounds of the Law

  (A)  In his representation of a client, a lawyer shall not:
- (5) Knowingly make a false statement of law or fact.

478

judge, to whom the matter was referred pursuant to Rule BV 9 (b), found that Boehm had violated DR 1-102 (A) (1), (4) (as to misrepresentation only), and (6); DR 6-101 (A) (2) and (3); DR 7-101 (A) (1), (2), and (3); DR 7-102 (A) (5); and DR 9-102 (A). The trial judge did not conclude that Boehm had violated DR 1-102 (A) (3) as to moral turpitude or (4), as to conduct involving dishonesty, fraud, or deceit. Bar Counsel excepted, contending that the trial judge was clearly in error. For the reasons set out below, we find it unnecessary to decide that issue.

In October, 1972, about one year after Boehm had begun his part time law practice, Daisy Johns retained Boehm to settle her deceased husband's estate. The estate was to be administered in the District of Columbia and, although Boehm did not belong to the District of Columbia Bar, he planned to rely upon the assistance of the senior partner in his law firm who was such a member. It was Boehm, however, who was ultimately responsible for the handling of the Johns Estate affairs.

While acting as estate counsel, Boehm was professionally deficient on a number of occasions. He failed to inform his client that she had to appear before the Register of Wills to take an oath to perfect her appointment as administratrix. Boehm also failed to inform Mrs. Johns of the need to file an inventory of the decedent's assets, a statement of money and debts due the decedent, and a timely estate account. In 1974

DR 9-102 Preserving Identity of Funds and Property of a Client

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

Boehm knowingly misrepresented to Mrs. Johns that he had filed suit on behalf of the estate to collect on an insurance policy and then later discovered that the policy had lapsed due to non-payment of the premiums some time before the decedent's death. Boehm accepted a promissory note for $5,000 as payment for decedent's truck. The buyer made no payments under the note but Boehm never pursued the matter. Boehm failed to establish a separate estate account and commingled estate funds with various other sums in his general escrow account.

While these violations of Boehm's professional responsibility are reprehensible, they do not constitute the basis for our decision. Boehm's professional misconduct which is of the gravest concern to this Court is his patent misappropriation of estate funds entrusted to his care. We explain.

On December 16, 1972, an auction of the decedent's business property was held from which $9,663.81 was realized. Boehm deposited this amount into his general escrow account.[2] Although the record below does not contain bank statements that date back to 1972, it is clear that Boehm should have been maintaining a balance in his escrow account in an amount equal to the proceeds of this auction sale minus any estate disbursements. In this regard, from December, 1972, through April, 1974, estate disbursements totalled $2,179.11. The earliest bank statement for the escrow account supplied from the record, dated January 31, 1975, indicated that as of January 6, 1975, Boehm's escrow account was overdrawn.

The same bank statement also shows a deposit to the escrow account on January 21, 1975, in the amount of $7,381.36. This amount represents the proceeds from the sale of some North Carolina land that had been included in the Johns Estate. Because the account was overdrawn by $27.05 at the time the deposit was made, the escrow account

---

2. It is the obligation of an attorney upon receiving funds representing the assets of an estate to deposit those funds in a separate estate account clearly identifiable by the name of the decedent. Such funds should not be commingled in an escrow account, general or otherwise.

balance as of January 21, 1975, was $7,354.31. No other deposit was made to the escrow account from January 21, through January 31, 1975. Within those 10 days, Boehm, who was the only person authorized to draw on the escrow account, withdrew $4,175.00. Boehm testified that he could not remember for what purposes these funds were used, though several of the checks drawn on the escrow account were payable to Boehm, himself.

Bank statements for the Boehm escrow account dated January 31, 1975, February 28, 1975, and March 31, 1975, indicate the following activity:

| Date | Withdrawals | | Deposits | Balance |
|------|-------------|---|----------|---------|
| 01-08-75 | | | | $ - 27.05 |
| 01-21-75 | | * | $7,381.36 | 7,354.31 |
| 01-22-75 | $ 500.00 | | | 6,854.31 |
| 01-24-75 | 1,500.00 | | | 5,354.31 |
| 01-27-75 | 975.00 | | | 4,379.31 |
| 01-29-75 | 100.00 | | | 4,279.31 |
| 01-30-75 | 1,100.00 | | | 3,179.31 |
| 02-03-75 | 108.00 | | | 3,071.31 |
| 02-05-75 | 150.00 | ** | 80.00 | 3,001.31 |
| 02-06-75 | 4.50 | | | 2,996.81 |
| 02-10-75 | 408.24 | | | 2,588.57 |
| 02-12-75 | 375.00 | ** | 75.00 | 2,288.57 |
| 02-14-75 | 5.00 | | | 2,283.57 |
| 02-18-75 | 200.00 | | | 2,083.57 |
| 02-19-75 | 100.00 | | | 1,983.57 |
| 02-24-75 | 771.67 | ** | 2,359.50 | 3,571.40 |
| 02-25-75 | 921.00 | | | 2,650.40 |
| 02-26-75 | 1,858.97 | ** | 2,858.47 | 3,649.90 |
| 02-28-75 | 1,345.33 | | | 2,054.57 |
| 03-03-75 | 1,125.00 | | | 929.57 |
| 03-04-75 | 900.00 | | | 29.57 |
| 03-06-75 | 210.00 | ** | 87.50 | -92.93 |

* Johns Estate Funds
** Funds from other sources

During the hearing before the trial judge Boehm's accountant submitted a report which indicated that no disbursements were made on behalf of the Johns Estate between April 24, 1974, and March 21, 1975. Thus, the conclusion is apparent from this report and the above bank statements that Boehm was not only unable to account for the balance of the money from the auction held in 1972 ($7,484.70) but he had completely depleted the estate deposit from the North Carolina land sale ($7,381.36) within less than two months of the time he deposited it.

We cannot conceive of any clearer or more convincing evidence of Boehm's misappropriation of Johns Estate funds than that supplied by the escrow account, bank records, and Boehm's failure to explain exactly how these funds were used. The trial judge concluded that Boehm had merely been negligent in handling the estate funds by relying on his bookkeeper to keep his accounts in order. The evidentiary record justifies Bar Counsel's concern with the trial judge's conclusion.

It is reprehensible for an attorney to misappropriate funds entrusted to his care. Such misconduct, absent extenuating circumstances, ordinarily warrants disbarment. *Attorney Griev. Comm'n v. Pattison,* 292 Md. 599, 441 A.2d 328 (1982); *Attorney Griev. Comm'n v. Burka,* 292 Md. 221, 438 A.2d 514 (1981). Boehm's contention that his inexperience and poor accounting practices constitute extenuating circumstances is without merit under the facts of this case. A member of the Bar of this State is presumed to be trustworthy and competent to handle funds entrusted to his care. If he is not competent, he is under an obligation either to refuse the representation or to join another member of the Bar to handle the matter who *is* proficient and competent. However, it is axiomatic that one does not have to be a lawyer to know that it is dishonest to convert to one's own use the property of another without authorization. Boehm's conduct cannot be condoned and the appropriate sanction is disbarment.

Accordingly, the name of respondent, Kenneth Lee Boehm, shall be stricken from the rolls of those authorized to practice law in this State.

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of transcripts, pursuant to Maryland Rule BV 15c for which sum judgment is entered in favor of the Attorney Grievance Commission against Kenneth L. Boehm.*