ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND *v.* LESTER H. CROWTHER

[Misc. (BV) No. 6, September Term, 1982.]

*Decided December 13, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Melvin Hirshman, Bar Counsel,* for petitioner.

No appearance on behalf of respondent.

PER CURIAM:

The Attorney Grievance Commission, acting through Bar Counsel, filed a Petition for Disciplinary Action, pursuant to Maryland Rule BV9, against Lester H. Crowther, alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. The matter was referred to Judge John R. Hargrove of the Supreme Bench of Baltimore City to make findings of fact and conclusions of law pursuant to Maryland Rule BV10. After an evidentiary hearing, Judge Hargrove made the following findings of fact and conclusions of law.

## "FINDINGS OF FACT

"1. In August, 1976, Sonia M. Mules, the complainant, and Pauline C. Kengerski retained the Respondent to administer the estate of their brother, Bernard F. Owens, who had died on August 6, 1976, and to advise them on all other matters in connection with the estate, including any taxes that might be due by the estate or any beneficiaries.

"2. The Respondent was advised that the assets of the estate were nominal, but that there was substantial jointly owned property consisting of 28 savings accounts totaling more than $148,000.00 and two pieces of real estate known as 2912 and 2914 St. Paul Street, Baltimore, Maryland.

"3. Mrs. Mules and Mrs. Kengerski were appointed as personal representatives of the estate of Bernard F. Owens.

"4. The real property known as 2914 St. Paul Street was sold by the remaindermen on June 21, 1977, with the net proceeds of $48,913.55 being paid by check to 'Lester H. Crowther, attorney.' Respondent retained said proceeds

until April, 1979 when he distributed the prorated portion to each of the remaindermen.

"5. The real property known as 2912 St. Paul Street, which was deeded by the remaindermen to the widow of the decedent, Sonia Owens, was sold by her on June 21, 1977. The net proceeds in the amount of $43,960.26 was paid by check to 'Lester H. Crowther, attorney' and deposited in an account at the Equitable Trust Bank, account number 001-103-144-4 in the name of the Respondent as attorney for Sonia Owens. Over a period of several years, the Respondent distributed a portion of the funds to the widow.

"6. From the proceeds of the sale of 2912 St. Paul Street and after payments to Mrs. Owens, the following amounts were left in an escrow account created by the Respondent to pay:

| | |
|---|---|
| Inheritance Tax | $4,500.00 |
| Federal Estate Tax | 8,460.00 |
| Reserve for Additional Tax Liability | 4,500.00 |
| Total | $17,460.00 |

These monies were under the exclusive control of the Respondent as of June 21, 1977 for the purposes listed. There incurred an outstanding tax liability of $17,680.00 unsatisfied on the estate which was not paid by the Respondent and was subsequently paid by Mrs. Sonia Mules with funds of her own on December 29, 1979. This amount was subsequently made good by the Respondent at the time of the settlement of the claim. By May 19, 1980, funds in the escrow account had been completely exhausted. Prior to that date subsequent contributions had been made by the heirs to satisfy the tax liability of the estate because they had been left unattended and unpaid by the Respondent.

"Mr. Crowther's only account of the whereabouts of these funds is that they were withdrawn for his personal use pursuant to an oral loan arrangement between himself and Sonia Owens. Mrs. Owens, at the hearing, denied the exis-

tence of such an agreement explaining that the money was not hers to lend and was to be used solely for the purpose of paying the expenses of the estate. By Respondent's own admission at his hearing, the $17,400.00 plus the accrued interest was used for his personal use. During this period (1977-1979), Mrs. Sonia Owens and others made numerous demands of Respondent to turn over records and funds pertaining to the estate of Bernard F. Owens. The Respondent never complied with these requests. Because of the difficulty in dealing with the Respondent's stalling tactics, Mr. Crowther was discharged as attorney for the Owens estate by all parties on September 15, 1979.

"Respondent refused all requests by new counsel, Dorothy Beaman, to turn over all records and monies of the Owens estate still under his control. The decedent's heirs were required to initiate civil action in the Superior Court of Baltimore City against the Respondent, and others in whose office he appeared to be associated, to recover their losses. A settlement was reached, where the Respondent finally turned over most of his records and paid his former clients a sum of $28,636.39 on December 15, 1980 in satisfaction of all claims.

"At the time of that settlement, the escrow account under Respondent's control had a zero balance. If properly maintained, the account should have held $17,460.00 plus interest, to cover taxes and expenses. The settlement was apparently financed on behalf of Mr. Crowther by his son, as Respondent had no escrow account funds remaining to turn over to pay the same. All losses occurring as a result of Respondent's mishandling of the estate, were made good through the settlement.

"7. Federal estate taxes for the decedent's estate were due in May of 1977. Respondent's letter indicates that proper federal returns were not filed until April 23, 1979, resulting in penalties of more than $17,000.00 to his clients. Federal taxes were not filed until approximately one month after new counsel advised Respondent of the fact the taxes were due. Improper federal and state fiduciary returns had been

filed by Mr. Crowther. When new counsel entered the case, refunds for these returns were obtained, as the estate did not generate income; and, therefore, was not required to file state nor federal fiduciary returns.

"8. The correspondence between Respondent and client was on the letterhead of 'Merriman, Crowther & Merriman', thereby leading his clients to believe that the Respondent was in a partnership. The civil action instituted by new counsel against the Respondent named the aforementioned firm as a defendant along with the Respondent as everyone involved was under the assumption that Mr. Crowther was an associate. The other members of the office in which the Respondent only shared space, had no knowledge of Respondent's activities, nor shared in the proceeds. Respondent admitted at the hearing that he only paid rent for office space and that 'Merriman, Crowther & Merriman' did not exist as a partnership.

## "CONCLUSIONS OF LAW

"It is concluded that as a result of his acts and omissions in this matter, Respondent did unethically and unprofessionally violate:

"Disciplinary Rule 1-102
'Misconduct.
(A) A lawyer shall not:
   (1) Violate a Disciplinary Rule.
   (3) Engage in illegal conduct involving moral turpitude.
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   (5) Engage in conduct that is prejudicial to the administration of justice.
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

"Disciplinary Rule 1-102
'Professional Offices.

(B) A lawyer shall not hold himself out as having a partnership with one or more other lawyers unless they are in fact partners.'

"Disciplinary Rule 2-110
'Withdrawal From Employment.

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

(4) He is discharged by his client.'

"Disciplinary Rule 6-101
'Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.'

"Disciplinary Rule 9-102
'Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client

coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.'

Code of Professional Responsibility, Rule 1230, Appendix F, Maryland Rules of Procedure.

"Further, Respondent, by his acts and omissions, did violate Article 10, Section 44, of the Annotated Code of Maryland."

The respondent did not except to any of Judge Hargrove's findings. Bar Counsel has recommended that the respondent be disbarred.

After carefully considering the matter, we accept the findings of Judge Hargrove. There being no compelling extenuating circumstances, we conclude that disbarment is the appropriate sanction. *See Attorney Grievance Commission v. Boehm,* 293 Md. 476, 446 A.2d 52 (1982); *Bar Association of Baltimore City v. Marshall,* 269 Md. 510, 307 A.2d 677 (1973).

*It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Lester H. Crowther.*