**In re Ronald GILCHRIST, Respondent.**

**No. 84–1162.**

District of Columbia Court of Appeals.

Submitted Nov. 26, 1984.

Decided March 13, 1985.

---

Jackson H. Rose, Assistant Bar Counsel, Washington, D.C., with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for petitioner.

Ronald Gilchrist, pro se.

Before MACK and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

In this disciplinary proceeding, the Board on Professional Responsibility found that respondent, a member of the District of Columbia Bar, violated DR 9–103(A)(2) by commingling his funds with his client's funds, and DR 9–103(B)(3) by failure to maintain proper records of client's funds. The Board also found that the other charges against respondent, misappropriation of his client's funds in violation of DR

1–102(A)(4), illegal conduct involving moral turpitude in violation of DR 1–102(A)(3), and conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5), should be dismissed for lack of clear and convincing evidence. Having so found, the Board recommended the sanction of public censure.

I

Bar Counsel's submissions of documentary record evidence, which consisted of bank statements and canceled checks, revealed the following. On July 9, 1982, respondent received a $1,500 check, payable to himself and his client, Antonia M. Gross, as a settlement payment in litigation wherein respondent had represented Gross. On July 16, 1982, respondent endorsed the settlement check, both for himself and, with Gross' permission, for her. Respondent deposited the check that day into his personal bank account. By July 26, 1982, as a result of checks written by respondent, the balance in his personal account dropped below $1,000, the amount due Gross as her portion of the $1,500 settlement, and remained below $1,000 until September 29, 1982.

At the hearing, respondent offered the following explanation for the apparent misappropriation between July 26, 1982 and September 29, 1982. We quote the Board's summary of respondent's testimony:

. (1) The bank for Respondent's personal account had a ten-day clearance period, which meant that the deposit of the $1,500 settlement check on July 16 could not be withdrawn until July 26.

(2) On July 26, Respondent cashed two separate checks drawn on his personal account payable to "cash," one for $500 and the other for $595, thereby causing the account to drop below $1,000 for the first time.

(3) On July 26, the $1,095 proceeds of the above two checks, plus another $405 which Respondent then had in cash, were used to purchase a $1,500 cashier's check payable to himself and Ms. Gross.

(4) The net effect of the above transactions was to allow Respondent, promptly at the end of the ten-day clearance period imposed by his bank, to substitute a $1,500 cashier's check payable to himself and Ms. Gross in lieu of the original $1,500 settlement check payable to himself and Ms. Gross, and throughout the ten-day clearance period, Respondent did not have an opportunity to apply the proceeds of the original settlement check to his own personal use.

(5) Respondent held the $1,500 cashier's check pending receipt from Ms. Gross of an executed settlement/disbursement sheet which he mailed to her on August 12, 1982, but which Ms. Gross did not return or sign until later in September.

(6) On or about September 21, 1982, Ms. Gross came to Respondent's office where she signed the settlement/disbursement sheet and endorsed the $1,500 cashier's check, whereupon Respondent then gave her a $1,000 check drawn on his personal account and post-dated to October 1, 1982 in order to allow time for Respondent to deposit the cashier's check and thereby cover this personal check.

(7) On advice of Bar Counsel, Ms. Gross did not cash Respondent's personal check.

(8) On September 29, 1982, Respondent cashed the $1,500 cashier's check and deposited $1,075 of the proceeds into his personal bank account to cover the post-dated $1,000 check he had previously given Ms. Gross.

(9) On October 20, 1982, Respondent purchased another cashier's check, this one for $1,000, which he personally delivered to Ms. Gross in return for her surrendering Respondent's personal check of the same amount.

The Hearing Committee accepted respondent's explanation, describing him as "open, candid and a credible witness," and made specific findings in accordance with his testimony, particularly, that the misappropriation allegation was not supported by clear and convincing evidence. Nonetheless, the Hearing Committee concluded that their findings of fact clearly established disciplinary violations of commingling and failure to maintain complete records of client's funds. Neither respondent nor Bar Counsel dispute the Hearing Committee's ruling that respondent commingled funds and failed to maintain proper records, and the Board concurred in the committee's rulings. As pointed out by the Board, the only dispute in this case is whether or not the evidence establishes a misappropriation violation.[1]

## II

Bar Counsel, in his brief to the Board, opposed the Hearing Committee's recommendation exonerating respondent from the charge of misappropriation, asserting that even if the Hearing Committee's findings of fact correctly describe respondent's conduct, they also establish misappropriation. Bar Counsel cited *Attorney Grievance Commission v. Boehm*, 293 Md. 476, 446 A.2d 52 (1982), which the Board has previously cited with approval, to support his position that "once the running balance of respondent's office account fell below the amount held in trust for Gross, misappropriation occurred."

The Board agreed that the documentary evidence submitted by Bar Counsel did es-

---

1. As stated earlier, respondent was also charged with conduct prejudicial to the administration of justice. This charge was based on respondent's alleged non-cooperation with Bar Counsel's investigation through failure to produce any documents corroborating the alleged purchase of the $1,500 cashier's check, as called for by a subpoena served by Bar Counsel. The Hearing Committee credited respondent's explanation that because it was a cash transaction, and because the branch office where he purchased the cashier's check had closed, he could not offer corroborating documentary evidence. The charge was expanded at the hearing to include an allegation that respondent engaged in illegal conduct involving moral turpitude in violation of DR 1–102(A)(3) by attempting to persuade Gross to give perjured testimony. The Hearing Committee found that both allegations lacked clear and convincing evidence to support them. The Board concurred in that conclusion and neither party opposed it.

tablish a *prima facie* case of misappropriation, but cautioned that under *Boehm, supra,* 293 Md. at 478, 446 A.2d at 54, a record consisting solely of bank records, bank statements, and canceled checks only constitutes clear and convincing evidence of misappropriation in the absence of the attorney's explanation of how the funds were used.

As stated, the Hearing Committee credited respondent's explanation. The Board, in reviewing that decision, noted that "[a]lthough respondent's story is extraordinary and difficult to accept without benefit of observing respondent's demeanor, the Board is bound by its own rules to accept findings of the Hearing Committee when supported by substantial evidence on the record as a whole." The Board expressed its puzzlement that respondent would write two checks ($500 and $595) with different dates on them and then cash both checks on July 26, 1982, so that the proceeds, along with $405 in cash that respondent brought with him, could be used to buy a $1,500 cashier's check. The Board concluded, though, that Gross' testimony tended to corroborate respondent's story insofar as she remembered going to respondent's office in mid-September to endorse a check (which respondent testified was the $1,500 cashier's check he purchased on July 26, 1982) that looked different from respondent's personal check. Further, the Board pointed out, respondent offered no documentary evidence of the $1,500 cashier's check to corroborate his story. Rather, respondent explained that it was a cash transaction in which he failed to retain a receipt and that he was unable to obtain verification of the transaction from the bank because by the time of the hearing the branch office that he did business with had closed. The Board then concluded that since Bar Counsel had the burden of establishing the charges against respondent by clear and convincing evidence, it was up to Bar Counsel to offer testimony of a bank official or other evidence to refute respondent's explanation. Hence, the Board refused to take judicial notice of bank record-keeping procedures which Bar Counsel urged should have allowed respondent to obtain corroborating evidence. By not offering evidence to refute respondent's story, the Board said, Bar Counsel took the risk that his story would be credited.[2]

The Board determined that "inasmuch as the weight to be given respondent's testimony turns almost entirely on credibility, the Board has therefore concluded that the factual findings of the Hearing Committee in this case should not be set aside."

Since the Board accepted respondent's explanation that he could not use any of the settlement funds during the ten-day clearance period imposed by his bank on all deposits and that on the tenth day he converted those funds into a cashier's check payable jointly to himself and Gross, it ruled that Bar Counsel had not proven the "unauthorized temporary use" necessary to require a finding of misappropriation.[3]

### III

In reviewing the Board's report, we must accept its findings of fact so long as they are supported by substantial evidence of record, and we shall adopt the recommendation "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C. Rules

**2.** Bar Counsel's motion to remand to the Hearing Committee for receipt of additional evidence, filed on the eve of the oral argument before the Board, was denied. It was denied because it was untimely; because it revealed on its face that the additional evidence had been received by Bar Counsel three months prior and Bar Counsel offered no reason for the delayed proffer; and because the motion failed to disclose the nature of the additional evidence.

**3.** We have defined misappropriation as "'any unauthorized use of client's funds ... including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.'" *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983) (quoting *In re Wilson,* 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979)). As the Board pointed out, Bar Counsel did not allege that respondent stole the funds.

Governing the Bar, Rule XI, § 7(3); *In re Thompson*, 478 A.2d 1061, 1063 (D.C.1984); *In re Alexander*, 466 A.2d 447, 448 (D.C. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984); *In re Smith*, 403 A.2d 296, 303 (D.C.1979). While we agree with the Board that "[R]espondent's testimony concerning the $1,500 cashier's check tells a story which, on the cold record, barely holds together and raises several questions," it is not inconsistent with the documentary evidence submitted by Bar Counsel. Having reviewed the record, and realizing that the disposition of the case hinged, in large part, upon credibility findings, we conclude that the findings and conclusions are supported by substantial evidence of record.

We turn to consider the propriety of the recommended sanction—public censure—in light of previous dispositions of similar cases. Recently, we surveyed the commingling cases brought before this court and found that in the vast majority of them the attorneys have been disbarred; in a small number of those cases they were suspended; and, in fewer still, the attorneys were censured. *In re Hines*, 482 A.2d 378, 384–85 (D.C.1984). We explained in *Hines* that our decision in cases where we order disbarment was influenced by additional factors such as a prior disciplinary record, repeated offenses, or violations of other disciplinary rules. *Id.* at 384 n. 19. We noted that, in particular, the co-existence of misappropriation with commingling has a direct bearing on our choice of a sanction to be imposed. *Id.* at 380 n. 8. Illustrative of this, we ordered disbarment in *In re Burka*, 423 A.2d 181 (D.C.1980), for commingling accompanied by an intentional misappropriation of a client's funds; in *Harrison, supra* note 3, 461 A.2d at 1034, we ordered suspension for a year and a day for commingling accompanied by an unintentional misappropriation; finally, in *In re Artis*, No. M–103–81 (D.C. February 25, 1982), we ordered censure for a commingling unaccompanied by any misappropriation. In *Artis*, the attorney negotiated settlements for his client in three separate matters. Thereafter, he sent the settlement checks issued jointly to him and his client for endorsement. Upon receiving the checks endorsed by his client, Artis deposited them in his personal account and wrote checks out of that account to the client for the amounts due the client. Artis also failed to keep internal accounts of his client's funds in his possession, and failed to provide his client with appropriate accounts of his financial transactions conducted on her behalf. He was found to have violated the same two disciplinary rules as respondent and was publicly censured by this court. *See also In re Goldstein*, 471 A.2d 267 (D.C.1984), in which we ordered censure where the attorney failed to preserve the identity of his client's funds, but had not misappropriated them, failed to return a client's funds upon request, and neglected a legal matter entrusted to him.[4]

■ We consider *Artis* sufficiently comparable to guide us in our decision to order that respondent be publicly censured for commingling and failure to maintain proper records. Accordingly, it is

ORDERED that respondent, Ronald Gilchrist, is formally censured.

*So Ordered.*

---

**4.** *In re O'Bryant*, 425 A.2d 1313 (D.C.1981), where we ordered a six-month suspension, is distinguishable. Importantly, the misuse of funds there was coupled with deceitful conduct which occurred when O'Bryant falsely stated that $15,000 which he had received from his client, after already receiving $5,000 in fees and expense money, was part of his agreed legal fee.