745 A.2d 1037

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Hammond J. BRISCOE, III.

Misc. AG No. 21, Sept. Term, 1999.

Court of Appeals of Maryland.

Feb. 10, 2000.

Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland, for petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, HARRELL, JJ.

CATHELL, Judge.

The Attorney Grievance Commission ("Commission"), by Bar Counsel, filed in this Court a petition seeking disciplinary action against H. Jerome Briscoe, III.[1] The Petition alleged

---

**1.** Respondent's proper name is apparently Hammond Jerome Briscoe, III. The petition was filed under the name H. Jerome Briscoe, III. The trial court docketed the case under the name H. Jerome Briscoe, III, and captioned its Findings of Fact and Conclusions of Law under that name. Petitioner captioned its Recommendation for Sanction under the name Hammond Jerome Briscoe, III, a/k/a H. Jerome Briscoe, III.

multiple violations of the Maryland Rules of Professional Conduct (MRPC). Pursuant to Maryland Rule 16–709,[2] we referred the matter to the Honorable Gary I. Strausberg, of the Circuit Court for Baltimore City, for a hearing and to make findings of fact and conclusions of law.

Respondent was served in person with the Petition for Disciplinary Action that required respondent to respond within fifteen days of service and notified him that a hearing would be held no later than thirty days from the date of response. Respondent failed to file any response. Thereafter, petitioner filed a Request for Order of Default. Judge Strausberg entered an Order of Default on August 17, 1999. There was no request to vacate the Order of Default and Judge Strausberg proceeded with the hearing. Respondent did not appear in court on the date scheduled for the hearing of this matter. Judgment by default subsequently was entered.

Judge Strausberg considered the Petition for Disciplinary Action and the transcript of the proceedings before the Inquiry Panel hearing that had taken place on two dates: December 1, 1998, and February 2, 1999. The transcript of the first hearing reflected that respondent had appeared and testified as to the matters alleged against him. He did not, however, appear at the second hearing, although the record reflects that respondent had been told that the hearing was to reconvene on that date, and that he had been told to appear and to produce certain records. He had also been mailed notices of

---

The Maryland Lawyers' Manual 657 (2000), lists only the name Hammond Jerome Briscoe, III. The sanction we shall impose, disbarment, applies regardless of which of the two names respondent is utilizing.

**2.** Rule 16–709 (Charges) provides in relevant part:

> b. ... The Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall designate the judge or judges to hear the charges....
>
> ....
>
> e. ... 2. Time for initial pleading. The attorney responding to the charges shall file his initial pleading in the court designated to hear the charges within fifteen days after the date of service of the charges upon him, unless a different time is fixed by the order of the Court of Appeals.

the reconvened hearing at two different addresses, although no return receipt had been received from one of those addresses.

Judge Strausberg found:

When the panel reconvened on February 2, 1999 the panel reflected that notices had been sent to Mr. Briscoe at the Yosemite Avenue address with a return receipt from Mr. Briscoe concerning the hearing and a letter to another address in Salisbury, Maryland for which no return receipt had as yet been received. The panel noted that the Respondent was to bring with him his records in each of the matters before the Inquiry Panel as well as producing original bank statements, check register, canceled checks in all checking accounts in his name used in the practice of law including regular checking, trust and escrow accounts for the period January 1, 1996 to the date of the panel hearing. The panel noted that Mr. Briscoe did not appear nor did he contact anyone concerning his inability to appear. The panel further noted that in the record was an Order of the Court of Appeals of Maryland dated April 14, 1998 prohibiting Mr. Briscoe from the further practice of law for failure to pay Clients' Security Trust Fund assessment.

The Court adopts, in connection with the complaint of Morris Gary, the allegations in the Petition for Disciplinary Action that the Respondent was retained by the mother of Morris Gary in March 1996 relative to ... post conviction proceedings. The Respondent placed the fee in his business account and maintained no other accounts in his practice, failed to cooperate with Bar Counsel and the Commission in connection with its investigation, applied the funds he received from Morris Gary's mother, without permission, to outstanding bills he alleged were due on behalf of another son of Mrs. Gary whom he had represented. His actions violated Maryland Rules of Professional Conduct 1.2,[3] 1.3,[4]

---

**3.** MRPC 1.2 (Scope of representation) states, in relevant part:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e),

1.4,[5] 1.15,[6] 1.16 [7] and 8.1(b) [8] and Maryland Rules 16–603 [9] and 16–604.[10]

and, when appropriate, shall consult with the client as to the means by which they are to be pursued. . . .

. . . .

(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

4. MRPC 1.3 (Diligence) provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

5. MRPC 1.4 (Communication) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6. MRPC 1.15 (Safekeeping property) provides in relevant part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. . . . Complete records . . . shall be kept by the lawyer . . . for a period of five years. . . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. . . . [A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request . . ., shall promptly render a full accounting. . . .

7. MRPC 1.16 (Declining or terminating representation) states in relevant part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . . .

(3) the lawyer is discharged.

. . . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

8. MRPC 8.1 (Bar admission and disciplinary matters) provides in relevant part:

The Court finds in connection with the complaint of Wayne B. Gunther, Jr. that Mr. Gunther retained Mr. Briscoe on November 24, 1997 for a criminal matter and paid the Respondent, Mr. Briscoe, $500.00. Complainant, being dissatisfied with the services of Respondent, asked for a refund of some of his fee and the Respondent promised to make the refund. Respondent thereafter advised the Complainant that he had signed a "non-refundable retainer agreement" but no such agreement has ever been produced. During investigation by the Petitioner, the Attorney Grievance Commission, the Respondent produced no files or other documentary evidence of his representation of the Complainant and failed to cooperate with the Commission. The Court therefore finds that the Respondent violated Maryland Rules of Professional Conduct 1.2, 1.16 and Rule 8.1(b).

> [A] lawyer in connection . . . with a disciplinary matter, shall not:
> . . . .
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority. . . .

**9.** Maryland Rule 16–603 (Duty to maintain account) provides in relevant part:

> An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. . . . Unless an attorney maintains such an account, . . . an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person.

**10.** Maryland Rule 16–604 (Trust account—Required deposits) provides in relevant part:

> Except as otherwise permitted by rule or other law, all funds, . . . received and accepted by an attorney . . . from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution.

Jessie Smolen complained that the Respondent, Mr. Briscoe, represented four (4) clients who were involved in an automobile accident in November, 1996 and the cases had been settled. The Respondent had assured Ms. Smolen that all pharmacy bills due Ms. Smolen would be paid.

At the Inquiry Panel hearing on December 1, 1998 each of the four (4) clients testified that the Respondent did handle their claims, obtained settlement checks, had the clients sign and endorse the checks to the Respondent who then had the checks cashed. The Respondent never deposited any funds or checks into any account nor did he pay Ms. Smolen for the pharmaceutical charges to her. Each of the clients were assured by the Respondent that their bills would be paid.

The Respondent, in his testimony before the Inquiry Panel, admitted he had "goofed" by not paying the bills. Once again Respondent failed to cooperate with the Commission in its investigation. The Court finds that the Respondent violated Maryland Rules of Professional Conduct 1.5 [11] by his failure to produce any writing concerning his contingency fees, Rule 1.15 dealing with safekeeping of property and once again 8.1(b) by his failure to cooperate with the Commission's investigation.

The fourth complaint was in the name of Bar Counsel which resulted in a call from the Honorable David B. Mitchell of this Court reflecting that the Respondent had appeared in his courtroom on September 30, 1998 alleging that he was an attorney representing a client with criminal charges pending and requested a continuance. The Respondent had been decertified by the Court of Appeals on April 14, 1998, the third time he had been decertified for

---

11. MRPC 1.5 (Fees) provides in relevant part:

(c) A fee may be contingent on the outcome of the matter.... The terms of the contingent fee agreement shall be communicated to the client in writing.... Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

non-payment since 1989. He failed to appear at a second inquiry panel hearing concerning this complaint nor did he furnish all records at that panel hearing which he was requested to do.

The Court finds that the Respondent violated Maryland Rules of Professional Conduct 5.5 [12] dealing with the unauthorized practice of law.

The Court makes each of its findings by clear and convincing evidence.

No exceptions to Judge Strausberg's findings have been filed. Accordingly, Judge Strausberg's factual findings are accepted.

■ Upon our perusal of Judge Strausberg's findings in reference to the individual complaints, however, we find that certain of his conclusions of law are not supported by those findings. As to the conclusions of law of a judge, to whom we have assigned hearing duties in an attorney grievance case, our consideration is essentially *de novo*, even where default orders and judgments have been entered at the hearing level. *See, e.g., Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 646, 732 A.2d 876, 881 (1999) ("This Court has original and complete jurisdiction over attorney disciplinary proceedings. Accordingly, the ultimate decision as to whether a lawyer has violated the [MRPC] rests with this Court." (citations omitted)).

### Complaint of Morris Gary

■ Upon our consideration of the facts as found by the hearing judge we cannot conclude as a matter of law that, in respect to the complaint of Morris Gary, respondent violated MRPC 1.2, 1.3, 1.4, or 1.16, i.e., they do not indicate how respondent violated the scope of his representation, failed to

---

12. MRPC 5.5 (Unauthorized practice of law) provides in relevant part that: "A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction...."

perform with diligence or communicate with his clients, or that his representation had ever been terminated. The findings of fact do not indicate occurrences involving respondent that implicate any of the provisions of MRPC 1.2, 1.3, 1.4, or 1.16.

Judge Strausberg found that respondent received funds from the mother of Morris Gary who had retained him to perform certain services for Morris Gary. Respondent deposited the funds in his business account and then applied the funds, without the mother's permission, to an outstanding account allegedly owed to him by a brother of Morris Gary. At the time, respondent maintained no other accounts, including trust accounts. Additionally, Judge Strausberg found that respondent had failed to cooperate with Bar Counsel and petitioner in its investigation of his alleged violations. We conclude from these undisputed factual findings of Judge Strausberg, that respondent has violated the provisions of MRPC 1.15 and Maryland Rules 16–603 and 16–604, in that he maintained no separate accounts for the deposit of money advanced on behalf of his clients for future representation of those clients, and no trust accounts. *See Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 94–97, 706 A.2d 1080, 1084–85 (1998) (holding that attorney's act of writing check to repay client's delinquent taxes from office account, and depositing client's "reimbursement" check into that account, violated Rule 16–604 and MRPC 1.15); *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 697 A.2d 446 (1997) (sanctioning attorney, in part, for violating the requirement of Rule 16–603 (then Rule BV3) that he maintain a separate client trust account); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 472, 671 A.2d 463, 475 (1996) ("Rule 1.15(a) requires an attorney to keep clients' funds in a separate account and 'to ensure that client funds are used only on the client's behalf and not for the lawyer's personal or business purposes.' Failure to maintain integrity of client funds violates the requirements of [MRPC] 1.15." (quoting Model Rules of Professional Conduct 1.15 cmt.)); *see also Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 678–79, 496 A.2d 672, 679 (1985); *Attorney Grievance Comm'n v. Velasquez,* 301 Md. 450, 454–55, 458, 483 A.2d 354, 356–57, 358 (1984); *Attorney Grievance*

*Comm'n v. Boehm,* 293 Md. 476, 478–81, 446 A.2d 52, 53–54 (1982). Additionally, we conclude that Judge Strausberg's findings that respondent had failed to cooperate with petitioner and Bar Counsel supports the conclusion that respondent violated MRPC 8.1(b), which provides that an attorney must not "fail to respond to a lawful demand for information from [a] ... disciplinary authority...." *See Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 286–87, 290, 294, 725 A.2d 1069, 1076, 1078, 1080 (1999) (holding that repeated failures to answer Bar Counsel's requests for information violated MRPC 8.1(b)). We conclude that, as to the Morris Gary complaint, the findings of fact do not support that respondent has violated MRPC 1.2, 1.3, 1.4, or 1.16, but they do establish that he has violated MRPC 1.15 and 8.1(b), and Maryland Rules 16–603 and 16–604.

### Complaint of Wayne B. Gunther

▉ In respect to the complaint involving Wayne B. Gunther, we conclude that there is nothing in the hearing judge's findings of fact that would support a conclusion that respondent violated MRPC 1.2. Mr. Gunther's "dissatisfaction" with respondent's representation alone does not establish a violation of MRPC 1.2. The hearing judge's findings in respect to this complaint provide simply that

Mr. Gunther retained Mr. Briscoe on November 24, 1997 for a criminal matter and paid the Respondent, ... $500.00. Complainant, being dissatisfied ..., asked for a refund of some of his fee and the Respondent promised to make the refund. Respondent thereafter advised the Complainant that he had signed a "non-refundable retainer agreement" but no such agreement has ever been produced.... [T]he Respondent ... failed to cooperate with the Commission.

We conclude that respondent violated the provisions of Maryland Rules 16–603 and 16–604. Additionally, he has violated MRPC 1.16(d), by not promptly returning Mr. Gunther's retainer fee upon request,[13] and MRPC 8.1(b), in that

---

**13.** In *Attorney Grievance Commission v. Milliken,* 348 Md. 486, 517–18 & n. 14, 704 A.2d 1225, 1240 & n. 14 (1998), we held that failure to

the hearing judge found that he failed to cooperate with the petitioner in an attorney disciplinary matter.

## Complaint of Jessie Smolen

■ The complaint of Jessie Smolen alleged the failure to pay pharmacy bills owed by four of respondent's clients that were supposed to be paid by respondent from the proceeds of the four clients' settlements. Judge Strausberg found that all four of the clients had endorsed their settlement checks over to respondent. The hearing judge found that respondent had never deposited any of the settlement checks or funds into any account nor did he pay the bills to Ms. Smolen, as he had promised. Judge Strausberg found that respondent had admitted before the Inquiry Panel that he had " 'goofed' by not paying the bills." The hearing judge also found that respondent had failed to produce any writing relating to his contingency fee arrangements in respect to the four cases involved in the Smolen matter. The circuit court again found that respondent failed to cooperate with petitioner's investigation.

We conclude as a matter of law that respondent violated MRPC 1.5(c) in respect to the finding below that respondent did not describe his contingency fees in writing, MRPC 1.15, in regard to mishandling the settlement checks, and MRPC 8.1(b), in respect to his failure to cooperate with petitioner.

## Complaint of Judge David B. Mitchell

■ The hearing judge found that a fourth complaint had been filed by Bar Counsel as a result of a communication from Judge David B. Mitchell informing Bar Counsel that respondent had appeared in Judge Mitchell's courtroom representing

---

repay any portion of an advance fee that goes unearned by the attorney violates MRPC 1.16(d). *See also Attorney Grievance Comm'n v. David,* 331 Md. 317, 319, 323, 628 A.2d 178, 179, 181 (1993). Respondent apparently acquiesced in his client's determination that he had not performed sufficient work to earn the entire $500 retainer fee; nevertheless, he then rescinded his original offer to repay part of the money by alleging a "non-refundable" retainer. Such a "non-refundable" fee for unperformed work would most likely violate MRPC 1.5.

a client in a criminal matter on September 30, 1998.[14] The hearing court found that respondent had been decertified by this Court on April 14, 1998. The findings indicated that he also failed to appear at the second, or continued, hearing concerning this complaint and failed to produce requested records in regard to the complaint. We conclude that respondent has violated the provisions of MRPC 5.5, which provides that "[a] lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction. . . ." *Cf. Attorney Grievance Comm'n v. Brennan,* 350 Md. 489, 497–501, 714 A.2d 157, 161–62 (1998) (noting that a suspended attorney could not engage in the unauthorized practice of law, nor could another attorney supervise him in that practice due to MRPC 5.5).

As we have indicated neither party has filed any exceptions to the hearing court's findings of facts. Accordingly, there remains only the issue of sanctions.

### Sanctions

 Respondent has disregarded an order of this Court by continuing to practice law while decertified as a practicing attorney because of his failure to pay Client's Security Trust Fund dues (and, he has been decertified three times since 1989 for failure to pay these dues). Respondent failed to appear and to produce requested records at a continuation of the Inquiry Panel hearing, and failed to respond to the Petition in the circuit court as required by our rules. Additionally, he has been found to have violated MRPC 1.15, 1.16(d), 5.5, and 8.1(b), and has been found in violation of Maryland Rules 16–603 and 16–604. We said recently in

---

**14.** The Maryland Code of Judicial Conduct, Maryland Rule 16–813, Canon 3B.(3) ("Administrative Responsibilities") provides: "A judge should take or initiate appropriate corrective measures against a judge or lawyer for unprofessional conduct of which the judge may be aware." Failure to comply with the Canons of the Maryland Code of Judicial Conduct may subject a judge to disciplinary action by the appropriate entities.

*Attorney Grievance Commission v. Franz,* 355 Md. 752, 760–61, 736 A.2d 339, 343–44 (1999):

It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Attorney Grievance Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 [ (1993) ]; *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). The public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). By imposing such a sanction, this Court fulfills its responsibility "to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute." *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules. *See Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989). Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984) (the facts and circumstances of a case will determine how severe the sanction should be); *Montgomery,* 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack,* 289 Md. 603,

609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975).

We have also noted that "[t]he gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct." *Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998) (citing *Flint's Case,* 133 N.H. 685, 582 A.2d 291, 293 (1990)).

Respondent, at least since the February 2, 1999 Inquiry Panel hearing, if not before, has consistently failed to cooperate with Bar Counsel, has practiced law when unauthorized to do so, and has entered into a contingency fee arrangement, but not reduced the same to writing. He has cashed checks from settlements for clients at a time when he did not maintain a trust account and failed to make the appropriate disbursements from those settlements, was unable or unwilling to produce records relating to some of the disbursements, and he failed to refund fees when required to do so. As this Court has noted many times before, these latter violations involving the mishandling of clients' funds alone warrant disbarment. *Id.* at 519, 704 A.2d at 1241 ("Respondent's treatment of his trust account in violation of Rules [16–607] and [16–609] alone warrants disbarment. As we have repeatedly said, commingling and conversion of client funds, in the absence of mitigating circumstances, ordinarily warrants disbarment." (citing *Myers,* 333 Md. at 449, 635 A.2d at 1319; *Attorney Grievance Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Grievance Comm'n v. Lazerow,* 320 Md. 507, 513, 578 A.2d 779, 782 (1990); *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 968 (1988))). Respondent has presented nothing in mitigation. There is no evidence that his actions are related to any mental or physical health problems or to substance abuse.

We determine that the appropriate sanction is disbarment. *Cf. Milliken,* 348 Md. at 519–20, 704 A.2d at 1241–42 (holding that disbarment was appropriate when an attorney failed to open a client trust account, routinely commingled client funds with his own, refused to return unearned fees, and would not cooperate with Bar Counsel's investigation); *Velasquez,* 301 Md. at 459, 483 A.2d at 358–59 (sanctioning an attorney with disbarment for failing to maintain separate client accounts, commingling funds and using client funds for business expenses); *Boehm,* 293 Md. at 479–81, 446 A.2d at 53–54 (disbarring an attorney for placing estate funds in a general escrow account and then misappropriating them).

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST HAMMOND JEROME BRISCOE, III A/K/A H. JEROME BRISCOE, III.**