PER CURIAM.
This disciplinary proceeding by The Florida Bar against Thomas A. Merritt, a member of The Florida Bar, is presently before us on complaint of The Florida Bar and Report of Referee. Pursuant to Rule 11.-06(9)(b) of the Integration Rule of The Florida Bar, the referee’s report and record were duly filed with this Court. No petition for review pursuant to Rule 11.09(1), Integration Rule, has been filed.
Having considered the pleadings and evidence, the referee found as follows:
Respondent, Thomas A. Merritt is and at all times hereinafter mentioned was a member of The Florida Bar subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
*1019 COUNT I
1. In late October or early November of 1979, Respondent abandoned his law practice thereby leaving all of his clients’ files unattended.
2. Respondent’s abandonment of his law practice necessitated that this Court appoint inventory attorneys, and pursuant to Florida Bar Integration Rule, article II, section IV, this Court did appoint said inventory attorneys on April 3, 1980.
COUNT II
3. On July 26, 1978, Respondent was retained by Mr. and Mrs. Stephen Barta-nowitz to represent them as purchasers in a real estate transaction.
4. As part of his representation of the Bartanowitzes, Respondent was to deliver to them a title policy and warranty deed on the subject piece of property.
5. At the time of the closing, Respondent received payment from Mr. and Mrs. Bartanowitz for providing them with the title insurance policy.
6. Respondent did not provide Mr. and Mrs. Bartanowitz with a title insurance policy or with a warranty deed at the time of closing. For a period of eight (8) months thereafter, Mr. Bartanowitz periodically telephoned Respondent’s office and left a message that Respondent should provide the title insurance policy and the warranty deed and contact Mr. Bartanowitz regarding same.
7. In July of 1979, Mr. Bartanowitz made an unannounced visit to Respondent’s office and met with Respondent. Respondent informed Mr. Bartanowitz that he would provide Mr. Bartanowitz with a title insurance policy and that he would forward a warranty deed to Mr. Bartanowitz.
8. Approximately two (2) weeks later, Mr. Bartanowitz received a warranty deed in the mail.
9. For the next several months, Mr. Bartanowitz resumed calling Respondent in order to obtain his title insurance policy-
10. In October of 1979, Mr. Bartanow-itz wrote The Florida Bar to seek assistance in obtaining a title insurance policy from Respondent. On November 5, 1979, approximately one (1) month after contacting The Florida Bar, Mr. Bartanowitz received his title insurance policy from Respondent.
COUNT III
11. In September, 1978, Ms. Jacqueline Smith retained Respondent to represent her in the purchase of a piece of property from a Ms. Emma Jean Van-Gunten.
12. The terms of the purchase and sale agreement provided that approximately $15,000 of the $24,000 sale price was to be used to satisfy the first mortgagee, Sun Bank of Ocala.
13. At the closing, on October 11, 1978, Ms. Smith tendered to Respondent $23,900 in cash which was the entire balance due from Ms. Smith as buyer.
14. Respondent informed Ms. Van-Gunten that he would forward a check to her for the balance due seller $7,371.50. Mr. Merritt subsequently forwarded a check to Ms. VanGunten in the amount of $7,371.50, drawn on the American Bank and Trust Company of Fort Lauderdale, Florida, Thomas A. Merritt — Attorney at Law — Trust Account # 2168-0960.
15. Immediately after the closing statement was signed by both Ms. Smith and Ms. Van Gunten, Ms. Smith accompanied Respondent to the American National Bank, 2240 East Sunrise Boulevard, Fort Lauderdale, Florida, where Respondent deposited the $23,900 into his trust account.
16. On December 5, 1978, Mr. Curry had a telephone conversation with Mr. Merritt, confirmed by letter of December 6, 1978, in which Mr. Merritt agreed on behalf of his client to bring the mortgage current by sending Mr. Curry one (1) check in the amount of $2,992.25 and another check in the amount of $118.00.
17. On December 18, 1978, Mr. Curry received Trust Check # 293, issued by *1020 Thomas A. Merritt, drawn on American National Bank and Trust Company of Port Lauderdale, Account # 2168-0960, dated December 15, 1978, in the amount of $2,992.25, and signed by Thomas A. Merritt.
18. By letter of December 19, 1978, Mr. Curry requested that Mr. Merritt forward a copy of the deed to Jacqueline Smith showing that she had assumed and agreed to pay the subject mortgage.
19. Mr. Curry received no response to his letter.
20. The subject mortgage is still outstanding.
21. Approximately three (3) months after the closing, Ms. Smith contacted the Respondent and asked him to provide her with her warranty deed. In January, 1979, Respondent sent Ms. Smith a warranty deed which he had prepared which did not show the mortgage held by the Sun Bank of Ocala as an exception.
22. In November of 1979, Ms. Smith received a letter from Mr. Landis Curry, attorney for the Sun Bank of Ocala, stating that no payment had been made on the mortgage held by Sun Bank of Ocala. Mr. Curry informed Ms. Smith that Respondent had indicated to the Sun Bank of Ocala that Ms. Smith had assumed the mortgage on the property purchased from Ms. VanGunten.
23. Because of Respondent’s failure to use the money he received from Ms. Smith to satisfy the mortgage in favor of Sun Bank of Ocala, Ms. Smith has had to pay $2,000 to bring the mortgage current and is required to pay $165.34 every month until she satisfies the outstanding balance of approximately $11,000.
24. In addition to her obligation to the Sun Bank of Ocala, Ms. Smith was required to pay $173.31 for taxes and penalties thereon, which Mr. Merritt was supposed to satisfy from the $23,900 delivered to him by Ms. Smith.
25. Mr. Merritt has not contacted Ms. Smith and has not returned any of the money that he received in trust from her and failed to use for the specific purpose for which it was delivered to him.
COUNT IV
26.Respondent has failed to maintain appropriate trust account records of the funds he is supposed to be holding for Ms. Smith in his trust account and Respondent has failed to render an appropriate accounting to Ms. Smith regarding her funds.
The referee recommends that respondent be found guilty of violation of Disciplinary Rules 1~102(AX6), 6-101(A)(3), 7-101(A)(2) and (3), 9-102(B) of the Code of Professional Responsibility and article XI, Rule 11.-02(4) of the Integration Rule of The Florida Bar and further recommends that respondent be disbarred from the practice of law pursuant to article XI, Rule 11.10(5) of the Integration Rule of The Florida Bar.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, Thomas A. Merritt, is hereby disbarred from the practice of law effective this date.
Costs in the amount of $2,369.09 are hereby taxed against respondent.
It is so ordered.
ADKINS, Acting C. J., and BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.