483 A.2d 354

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Ray VELASQUEZ.

Misc. (Subtitle BV) No. 3, Sept. Term, 1984.

Court of Appeals of Maryland.

Nov. 8, 1984.

Motion for Reconsideration Denied Dec. 24, 1984.

---

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, and Asst. Bar Counsel, Annapolis, for Attorney Grievance Com'n of Maryland.

Ray Velasquez, Hillcrest Heights, pro se.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (Retired), specially assigned.

SMITH, Judge.

This tragedy is rooted in the abuse of alcohol but not abuse by the respondent. It involves misguided efforts to keep a law practice and a lawyer's personal affairs afloat financially. Unfortunately, the means used violated a Maryland statute and certain of the Disciplinary Rules.

Acting pursuant to the provisions of Maryland Rule BV9 on behalf of the Attorney Grievance Commission, Bar Counsel filed a petition with us seeking disciplinary action against Ray Velasquez, a member of the Bar of this Court since June 7, 1963. The petition asserted that Velasquez violated Disciplinary Rules 1–102(A)(1), (3), (4), (5), (6); Disciplinary Rule 9–102(A)(1), and Disciplinary Rules 9–

102(B)(3) and (4).[1]  It was further alleged that he violated Maryland Code (1957, 1981 Repl.Vol.) Art. 10, § 44 relative to escrow funds.[2]

---

**1.**  These rules state in pertinent part:
"DR 1–102 Misconduct.
"(A) A lawyer shall not:
  (1) Violate a Disciplinary Rule.
  (2) ...
  (3) Engage in illegal conduct involving moral turpitude.
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
  (5) Engage in conduct that is prejudicial to the administration of justice.
  (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
"DR 9–102 Preserving Identity of Funds and Property of a Client.
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
  (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
  (2) ...
"(B) A lawyer shall:
  (1) ...
  (2) ...
  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

**2.**  This statute states:
"(a) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of written instructions or court order to the contrary shall be expeditiously deposited in an account maintained as a separate account or accounts for funds belonging to others.  In no event shall he commingle any such funds with his own or use any such funds for any purpose other than the purpose for which such funds were entrusted to him.
"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Seventh Judicial Circuit. The facts are not in dispute. In fact, a stipulation as to pertinent facts was entered into at the hearing:

"In 1974, Mr. Velasquez and Joseph A. Finlayson entered into a partnership for the practice of law. Difficulties arose when Mr. Finlayson began staying away from the office for long periods of time, and the income of the office regularly decreased.[3] Mr. Velasquez attempted to keep the office going and attempted to work out payment plans with the creditors, but some of them refused and proceeded to freeze the partnership account and the respondent's administrative bank account in approximately 1979.

"As a result, the respondent continued to carry on his practice utilizing his escrow account for all purposes in order to keep funds on hand, to keep the office going and pay the creditors. He deposited his own money into that account and commingled it with the clients' funds. He wrote checks on that account for business and personal expenses as well as for client matters.

"On or about November 22, 1982, the respondent received a check in the amount of $2,522.40 from GEICO or the Government Employees Insurance Company in full settlement of the personal injury claim of Mary Herring. He deposited $2,522.40 into his escrow account, and at the same time wrote a check to the client, Mary Herring, in

proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) hereof, shall be guilty of a misdemeanor for each such violation and on conviction thereof, shall be fined not more than five thousand dollars ($5,000.) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

**3.** *See Attorney Griev. Comm'n v. Finlayson,* 293 Md. 156, 442 A.2d 565 (1982), for a complete discussion of Mr. Finalyson's activities and problems. Finlayson was an alcoholic.

the amount of $1,301.27, and a check to Dr. Owens, the only treating physician for $522.00. The remainder of this settlement money represented his fee.

"On December 7, 1982, the balance in Mr. Velasquez's escrow account fell below the amount necessary to cover the check to Dr. Owens and remained below that amount, at least until January 18, 1983. The other checks the respondent wrote during this period from that escrow account were for various business and personal expenses.

"On two occasions in December Dr. Owens submitted his check, but it was returned due to non-sufficient funds.

"On March 30, the respondent sent Dr. Owens a treasurer's check in the amount of $522.00 in payment of his bill.

"As of May 23, 1984, Mr. Velasquez now has an administrative account and will utilize his escrow account only for client funds."

Bar Counsel took the deposition of Velasquez which was entered into evidence. From it we learn that by the spring of 1984 Velasquez had been successful in paying off all the creditors of the former law firm.

The trial judge commented in his report to us:

"As the umpire, I must report these violations. However, I would be remiss if I did not note that this inquiry has been simplified for both Bar Counsel and the Court by the respondent's candor. He has not attempted to obfuscate or secrete. He makes no defense of alcoholism, womanizing, ignorance, psychopathy or physical illness. As is evident from Petitioner's Exhibit 3 he comes before the Court and says, 'I did it for worthy purposes; I was wrong.' [4] For whatever candor is worth in the ultimate decision of the Court of Appeals, I thought I'd make note of it."

---

**4.** Petitioner's Exhibit 3 was Velasquez' answer to Bar Counsel's petition for disciplinary action. The facts were admitted but Velasquez denied that he misappropriated or converted client's funds.

The trial judge found a violation of Art. 10, § 44, and violations of DR 1–102(A)(1) (violation of disciplinary rule), (4) (re deceit and misrepresentation), and DR 9–102(A)(1) (re escrow fund). He found no violation of DR 1–102(A)(3), (5), and (6) and DR 9–102(B)(3) and (4).

Bar Counsel excepts to the trial judge's findings of fact and conclusions of law on the following bases:

"1. The Court below failed to find that Respondent violated Disciplinary Rule 1–102(A)(3), (a lawyer shall not 'engage in illegal conduct involving moral turpitude').

"2. The Court below failed to find that Respondent violated Disciplinary Rule 1–102(A)(6), (a lawyer shall not 'engage in any other conduct that adversely reflects on his fitness to practice law') although he did find such violation in his oral findings made at the conclusion of the hearing.

"3. The Court below failed to find that Respondent violated Disciplinary Rule 9–102(B)(4), and such finding is compelled by the facts found in this case.

"4. The Court below failed to find that Respondent had converted client funds, although specifically finding a conversion in his oral findings made at the conclusion of the hearing."

We shall sustain the exceptions.

The trial judge reasoned in part in his oral comments from the bench:

"I do not believe he is in violation of [DR] 1–102(A)(3). I know that even though I said he has violated [Article] 10, [§] 44; I just don't believe it was conduct involving moral turpitude.

"[DR] 1–102(A)(4), I find that Mr. Velasquez engaged in conduct involving deceit. He knew it. He knew it was wrong, and the fact that he did it, for what he presumed to be a better and greater purpose, and that is to ultimately satisfy the creditors doesn't change the fact that it's deceitful. I don't find it was done dishonestly. I don't even find it was done fraudulently or by misrepre-

sentation. It was just deceitful in the sense that he knew that he should maintain a separate business account. He knew that as hopefully all lawyers this day and age know, but he also knew that if he did it he was going to be subject to seizure by the creditors. And in order to deceive the creditors, he hid his money under the name of the client's umbrella escrow account. That is deceitful.

"Now, there are those who will argue that it also is fraudulent, and I am sure that an argument can be made for that, but I don't believe it to be fraudulent in that he was trying to cheat the creditors out of something. This was income. He knew this wasn't money he had when they levied. He was trying ultimately, in fact, to do just the opposite, to pay them off. I don't believe it was either dishonest, and there is no evidence that he—well, it is a misrepresentation, isn't it? Representing as funds of another funds that are really yours. And I must find that it was both deceitful and a misrepresentation, but I don't think it was dishonest, and I don't think it was done for fraudulent purposes."

■ What DR 1–102(A)(3) says is that a lawyer shall not "[e]ngage in illegal conduct involving moral turpitude." What Velasquez did here admittedly was illegal because it violated Art. 10, § 44. In *Savings Bank v. Sauble,* 183 Md. 628, 630, 39 A.2d 862, 863 (1944), Judge Delaplaine said for the Court, "It has been an ancient policy of the common law to protect the rights of creditors against all dispositions of property which result in fraud." What was done was illegal. It was intended to conceal Velasquez' property from his creditors. Hence, it was fraudulent. It involved moral turpitude.

■ The failure of the trial judge in his written opinion to find a violation of DR 1–102(A)(6) pertaining to a lawyer not engaging in any other conduct that adversely reflects on his fitness to practice law is an apparent oversight, since, as Bar Counsel points out in his exception, such a violation was

found in the oral opinion of the trial judge. Accordingly, we sustain this exception.

■ Bar Counsel contends that the trial judge should have found a violation of DR 9–102(B)(4) pertaining to paying over funds. Velasquez obviously did not pay over when he was supposed to do so. Thus, there was a violation of this rule. We sustain the exception.

■ The failure of the trial judge in his written opinion to find a conversion of client's funds is another apparent oversight since such a finding was made in his oral opinion. Hence, we sustain that exception.

■ For a period of five years with the laudable purpose, on the one hand, of attempting to pay off creditors, but with the fraudulent purpose, on the other, of hiding his assets from the view of his creditors, this lawyer handled his personal and office financial affairs through his escrow account. This was in direct violation of Art. 10, § 44 and in direct violation of the Disciplinary Rules. The account became overdrawn. Thus, Velasquez dipped into the assets of his clients. There is one thing that lawyers must understand and that is that the assets of their clients are a sacred trust. In *Bar Ass'n v. Marshall*, 269 Md. 510, 307 A.2d 677 (1973), Judge Digges said for the Court:

"[I]t is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients or others that they accept them in trust and are strictly accountable for their conduct in administering that trust, so they dare not appropriate those funds and properties for their personal use. The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. *Balliet v. Balto. Co. Bar Ass'n*, 259 Md. 474, 479, 270 A.2d 465 (1970); *In the Matter of Lombard*, 242 Md. 202,

218 A.2d 208 (1966); *In Re Williams,* 180 Md. 689, 23 A.2d 7 (1941)." 269 Md. at 519, 307 A.2d at 682.

■ For the reasons expressed in *Marshall* we have said repeatedly, that, absent extenuating circumstances, disbarment is the sanction which should be imposed upon an attorney for converting the funds of his client to his own use. *See, e.g., Attorney Griev. Comm'n v. Pattison,* 292 Md. 599, 609, 441 A.2d 328, 333 (1982); *Attorney Griev. Comm'n v. Burka,* 292 Md. 221, 438 A.2d 514 (1981); *Attorney Griev. Comm'n v. Micka,* 289 Md. 131, 133, 422 A.2d 383, 384 (1980). We find no extenuating circumstances here. We have asserted many times that sanctions imposed in disciplinary proceedings against an attorney are not for the purpose of punishing the individual, but are intended as protection to the public. *See, e.g., Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 686–87, 480 A.2d 807, 817 (1984); *Attorney Griev. Comm'n v. Mandel,* 294 Md. 560, 588, 451 A.2d 910, 923 (1982); *Pattison,* 292 Md. at 609, 441 A.2d at 333; *Attorney Griev. Comm'n v. Engerman,* 289 Md. 330, 346, 424 A.2d 362, 370 (1981); *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). As we said in *Pattison,* 292 Md. at 610, 441 A.2d at 333, we desire that the message go out loud and clear to the Maryland Bar and to the citizens of Maryland that we shall not tolerate attorneys misusing their clients' funds. It follows that the name of Ray Velasquez shall be stricken from the rolls of those entitled to practice law in this state.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RAY VELASQUEZ.