511 A.2d 520

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Nathaniel Walter MOREHEAD.**

**Misc. Docket (Subtitle BV)**
**No. 36, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 15, 1986.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel, for Attorney Grievance Com'n of Maryland.

Elizabeth L. Julian, and Charles H. Dorsey, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH, and McAULIFFE, JJ.

SMITH, Judge.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with this Court on behalf of the Attorney Grievance Commission seeking disciplinary action against Nathaniel Walter Morehead, who was admitted to the Bar of this Court on June 21, 1973. We shall disbar.

The allegations of misconduct by Morehead arose from two complaints, the first submitted by Dr. Marc A. Berman and the second initiated by Mrs. Kathleen Anderson and Mrs. Mable Hall Clark. Regarding the first complaint, Bar Counsel alleged violation of Disciplinary Rules 1–102(A)(1), (3), (4), (5), and (6); 9–102(A)(1) and (2); and 9–102(B)(1), (2), (3), and (4), as well as a violation of Maryland Code (1957, 1981 Repl.Vol., 1985 Cum. Supp.) Art. 10, § 44.[1] As to the second complaint, Bar Counsel alleged violation of Discipli-

---

1. The statute provides:

"(a) (1) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of court order to the contrary shall be expeditiously deposited in an account or accounts maintained as a separate account or accounts for funds belonging to others. In no event shall the attorney commingle any such funds with such attorney's funds or use any such funds for any purpose other than the purpose for which they were entrusted to the attorney."

\*    \*    \*    \*    \*    \*

"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) of this section, shall be guilty of a misdemeanor for each such violation and, on conviction thereof, shall be fined not more than five thousand dollars ($5,000) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

nary Rules 1–102(A)(1), (5), and (6); 2–106(A); 6–101(A)(3); and 7–101(A)(1), (2), and (3).[2]

2. The Disciplinary Rules said ·to have been violated in the two complaints state in relevant part:

"DR 1–102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

(2) ...

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"DR 2–106 Fees for Legal Services.

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

"DR 6–101 Failing to Act Competently.

(A) A lawyer shall not:

(1) ...

(2) ...

(3) Neglect a legal matter entrusted to him."

"DR 7–101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

"DR 9–102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

I

The matter was referred for hearing to one of the judges of the Circuit Court for Baltimore City pursuant to Rule BV9. Pertaining to the Berman complaint, he found that Morehead had been retained by Mr. and Mrs. Patrick Watkins in December 1981 to represent them in a personal injury matter. Mr. Watkins had been treated by Dr. Raymond D. Drapkin from December 1981 through May 1982. He had subsequently been treated by Dr. Marc A. Berman, a chiropractor, from January 1983 through May 1983. According to his agreement with his clients, Morehead was to pay these health care practitioners for their services from the proceeds of insurance checks issued to his clients by Nationwide Insurance Company.

In late January or February 1983, the Respondent received a draft in the amount of $1,230.00, issued by Nationwide on January 24, 1983, $1,055.00 of which reflected a claim for payment of medical expenses billed for treatment rendered by Dr. Drapkin to Mr. Watkins. This draft was deposited in Respondent's escrow account on February 4, 1983. He received a second draft in the amount of $805.00

---

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:
  (1) Promptly notify a client of the receipt of his funds, securities, or other properties.
  (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safe-keeping as soon as practicable.
  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

on August 8, 1983, reflecting payment of a similar claim for treatment rendered by Dr. Berman to Mr. Watkins. Also on August 8, Respondent received a $5,000.00 check from Nationwide representing full settlement of Mr. Watkins' liability claim. On August 9, 1983, Respondent deposited the $5,000.00 draft and the $805.00 draft in his escrow account. He paid Mr. Watkins $3,335.00 and retained $1,665.00 as a legal fee for services rendered.

The trial judge further found:

"[D]uring the months of September, October, and November through the date of November 16, 1983, as a result of withdrawals made by Mr. Morehead from his escrow account for purposes other than to satisfy the payment of escrow bills, the balance of funds remaining in Mr. Morehead's escrow account fell below that sufficient to insure the payment of outstanding obligations due to be paid from his escrow account. In fact, by November 16, 1983, Mr. Morehead had reached a negative balance of $36.99."

Morehead admitted that the checks drawn to himself out of his escrow account were for his own benefit.

Dr. Drapkin was paid by the Respondent on March 20, 1984. Dr. Berman was finally paid on October 19, 1984, two months after he filed a complaint with the Attorney Grievance Commission. With that remittance to Dr. Berman, Respondent included a letter explaining the reasons for the late payment. In paragraphs seven and eight of that letter, he wrote:

"(7) Our records indicate two (2) payments for medicals for Mr. Watkins, following settlement of his case.

"(8) We have finally been able to determine, from correlation of your corresponsence [sic], cancelled checks, etc., that both payments were made to Dr. Drapkin, thus, our problem in determining that your account remained open."

When questioned by Bar Counsel, Morehead admitted that only one payment had actually been made to Dr. Drapkin on behalf of Mr. Watkins and that there was no

correspondence evidencing such a problem. After analyzing the various excuses given by Respondent for his failure to pay the doctors on time, the trial judge stated:

"The problem with Mr. Morehead's reasoning is that it has no effect and offers no explanation for his failure to pay Drs. Berman and Drapkin promptly from the monies received from settlement, which was held apparently on August 9, 1983, with his clients, at which time the balance of monies received from Nationwide, including a check for $805.00 owing to Dr. Berman, was deposited in Mr. Morehead's First National Bank escrow account....

"More serious is Mr. Morehead's apparent inaccuracy contained in his letter of October 19, 1984, at which time he forwarded a check to Dr. Berman for the balance due him on behalf of Mr. Watkins. This Court has examined paragraphs 7 and 8 at length both in its final recital and in its analysis.

"After having heard Mr. Morehead testify at great length in the case at hand, this Court cannot state that Mr. Morehead clearly and deliberately lied to Dr. Berman in order to weave a web of conspiracy and defense to protect himself from future proceedings which might be on the horizon....

"This Court cannot say from clear and convincing evidence that Mr. Morehead deliberately lied to Dr. Berman in his letter of October 19, 1984."

As to Bar Counsel's charges, the trial court found that violations of DR 1–102(A)(1) and DR 9–102(A)(2) as well as Art. 10, § 44 had been sustained.

With respect to the second complaint, that of Kathleen Anderson and Mable Hall Clark, the trial judge found that the Respondent had been retained in January of 1983 by these women to investigate the suspicious circumstances surrounding the 1981 death of James E. Hall, Mrs. Clark's son and Mrs. Anderson's grandson. In return for a retainer of $3,500.00 and a fee of $85.00 an hour for his services, plus costs, Respondent agreed to investigate Hall's death,

consult with witnesses, retain a private investigative service, collate facts, consult with his clients "at all appropriate times" throughout the investigation and forward a monthly accounting of expenses "or as necessary." Morehead confirmed the terms of this agreement in a letter written January 17, 1983.

The trial judge found:

"[T]he services rendered by Mr. Morehead to Mrs. Anderson and Mrs. Clark were not only minimal in nature, but despite the prior training and experience of Mr. Morehead, which will clearly indicate that he did or should have had knowledge of how to conduct such an investigation, was not only inadequate, but bordering on non-existent."

He characterized Morehead's testimony as "exaggerated" and "nothing short of incredible." In fact, the court found "that the absence of notes or other evidentiary material, either in the file or in Mr. Morehead's memory, is clearly evidence that little such work was actually accomplished." He further found that the "Exhibits clearly show that he did not conduct a proper investigation. In short, the file is a mess, unorganized, and lacking of any evidence of either consistent work or competent work."

Therefore, the trial judge found that Bar Counsel had established violations of DR 1–102(A)(1) and (5); DR 2–106(A); and DR 6–101(A)(3) with respect to this complaint.

## II

Both Bar Counsel and Morehead have filed exceptions.

### a. (1)

■ Bar Counsel excepts to the trial judge's failure to find that Respondent violated DR 1–102(A)(3) and (4) with respect to the Berman complaint.[3] Specifically, Bar Coun-

---

**3.** Bar Counsel conceded at oral argument that a violation of DR 1–102(A)(4) merges into a violation of DR 1–102(A)(3). We agree with this observation and decline to address DR 1–102(A)(4) separately.

sel argues that "in light of the facts adduced at trial, the conclusion that he violated these rules is inescapable."

At trial, it was shown that by August 1983 Respondent had deposited his client's PIP funds totaling $1,860 into his own escrow account. Checks were written from the escrow account, payable to Respondent, from August 1983 until November 1983 by which time the balance in the account had been reduced to a negative figure. Respondent gave no explanation at trial and admitted that the bank records of transactions for that period were accurate. At oral argument, while indicating the possibility of a bookkeeping error, counsel for Respondent was still unable to explain the negative balance in the escrow account.

This Court dealt with a similar case of misappropriation in *Attorney Griev. Comm'n v. Boehm*, 293 Md. 476, 446 A.2d 52 (1982). There Boehm deposited monies from an auction of the decedent's business property into his own general escrow account. There, too, the escrow account ultimately showed a negative balance. After examining the bank statements the Court concluded:

> "We cannot conceive of any clearer or more convincing evidence of Boehm's misappropriation of Johns Estate funds than that supplied by the escrow account, bank records, and Boehm's failure to explain exactly how these funds were used." 293 Md. at 481, 446 A.2d at 54.

We agree with the contentions of Bar Counsel that Morehead's conduct in using the funds of his client for his own benefit constitutes misappropriation. As we stated of Disciplinary Rule 1–102(A)(3) in *Attorney Griev. Comm'n v. Willemain*, 305 Md. 665, 675, 506 A.2d 245, 250 (1986), "[t]his rule pertains to engaging in illegal conduct involving moral turpitude. Misappropriation of the funds of others by an attorney is such conduct." Therefore, Bar Counsel's exception is sustained.

### (2)

Bar Counsel also excepts to the trial judge's failure to find that Respondent violated DR 1–102(A)(4) involving

dishonesty, fraud, deceit or misrepresentation in connection with his transmittal of a letter dated October 19, 1984, to Dr. Berman in which he attempted to explain the reasons for the delay in payment of his client's medical bill. The letter stated that Respondent's "records indicate two (2) payments for medicals for Mr. Watkins, following settlement of his case," and "... both payments were made to Dr. Drapkin...." No such records exist and the Respondent admitted as much. A copy of this letter was also forwarded to assistant Bar Counsel in response to the complaint filed by Dr. Berman.

The trial judge found that although respondent was "less than candid with Dr. Berman," he could not state that Respondent had "clearly and deliberately lied." We disagree with the trial judge's finding. To the contrary, we find that this conduct illustrates dishonesty. This exception is therefore sustained.

### (3)

Finally, Bar Counsel excepts to the trial judge's failure to find a violation of DR 9–102(B)(4), which requires an attorney to "promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." Bar Counsel's contention requires this Court to consider whether DR 9–102(B)(4) requires counsel promptly to remit a client's funds to third parties for the account of the client where the client has authorized the attorney so to remit. We believe it does.

In *Attorney Griev. Comm'n v. Velasquez*, 301 Md. 450, 483 A.2d 354 (1984), Velasquez had received a check in the amount of $2,522.40 from GEICO on November 22, 1982, representing settlement of a client's personal injury claim. He deposited the check into an escrow account and paid the client $1,301.27. He also wrote a $522.00 check to his client's sole treating physician, a Dr. Owens, and retained the remaining funds as a fee. Velasquez continued to write checks on the account for various business and personal

expenses. Dr. Owens was unable to cash the check on two occasions because of insufficient funds in the escrow account. Finally, on March 30, Valasquez sent Dr. Owens a treasurer's check in payment of the bill.

Bar Counsel excepted in that case to the trial judge's failure to find a DR 9–102(B)(4) violation, as he does here. This Court sustained the exception, stating:

"Velasquez obviously did not pay over when he was supposed to do so. Thus, there was a violation of this rule." 301 Md. at 458, 483 A.2d at 358.

Other jurisdictions have held that a lawyer's obligation extends to making payments to third parties out of client funds as directed by the client. *See, People v. Johnson,* 627 P.2d 748 (Colo.1981); *The Florida Bar v. Merritt,* 394 So.2d 1018 (Fla.1981); *In re Robison,* 519 S.W.2d 1 (Mo.1975); *Matter of Lee,* 283 N.W.2d 179 (N.D.1979); and *Warner v. State Bar,* 34 Cal.3d 36, 192 Cal.Rptr. 244, 664 P.2d 148 (1983).

We conclude that Morehead's conduct here in failing to pay Dr. Drapkin and Dr. Berman for over a year constitutes a violation of DR 9–102(B)(4). Thus, Bar Counsel's exception is sustained.

### (4)

Bar Counsel took no exceptions to the trial judge's findings or conclusions in the Anderson and Clark matter.

### b.

Morehead has filed numerous exceptions to the trial judge's evidentiary rulings, findings of fact, and conclusions of law.

### (1)

■ Morehead excepts to the refusal of the circuit court to permit into evidence several of the unanimous conclusions of the Inquiry Panel. In *Attorney Griev. Comm'n v. McBurney,* 282 Md. 116, 122, 383 A.2d 58, 62 (1978), we stated that we regarded the Inquiry Panel procedure as

similar to a grand jury presentment. We further noted that no provision existed by which the testimony taken before the Inquiry Panel was to be filed with us or used as evidence before us. There is no requirement that any conclusion drawn be binding on this Court as "the ultimate decision as to whether an attorney has or has not been guilty of misconduct is to be made by us." *Id.* at 122. Thus Morehead's exception is overruled.

### (2)

Morehead similarly excepts to the trial court's refusal to permit Respondent to respond to his counsel's question as to whether a check, drawn on his client escrow account, had ever been dishonored. The trial judge refused to permit an inquiry into what Morehead had done in other cases because it was immaterial to these particular proceedings. We approve of such a ruling and overrule this exception.

### (3)

Morehead excepts to the conclusion in the Watkins matter that he violated DR 9-102(A)(2) which requires an attorney to deposit all funds of a client into one or more identifiable bank accounts. This provision requires an attorney not only to deposit but also to maintain the identity of a client's funds therein. Thus, in accordance with our finding of misappropriation above, this exception is overruled.

### (4)

Because we affirmed the trial judge's finding of a DR 9-102(A)(2) violation in b(3) above, we find no merit in Morehead's exception to the circuit court's finding in the Watkins matter of a violation of DR 1-102 which states that "a lawyer shall not violate a Disciplinary Rule."

### (5)

Morehead excepts to the trial judge's finding in the Watkins matter of a violation of Art. 10, § 44(b) to the extent that it involves intent and willfulness. To the con-

trary, he contends, the "uncontroverted evidence impels the conclusion that all checks negotiated by Respondent were for fees which he had earned." As Bar Counsel points out, Morehead testified that he examined his bank statements during the months of September, October and November and found no problems. He must therefore have been aware of the dwindling balance and must have willfully continued to draw checks to himself regardless. The escrow account reached a negative balance. The facts show a clear violation of Art. 10, § 44 (b). Morehead's exception is overruled.

### (6)

With regard to the Anderson-Clark matter, Morehead has filed several exceptions. We have reviewed the record and find these exceptions to be without merit. Because we conclude that the trial judge did not clearly err in his findings of fact or in the conclusions he drew from the evidence, we overrule these exceptions.

### III

In cases of this nature, we have often quoted Judge Digges' opinion in *Bar Ass'n v. Marshall*, 269 Md. 510, 307 A.2d 677 (1973), where he said for the Court:

"We, therefore, conclude that when a member of the bar of this Court is found to have betrayed the high trust imposed in him by appropriating to his own use funds of others entrusted to him, as Marshall did, then, absent the most compelling extenuating circumstances, which we do not find to be present here, disbarment should follow as a matter of course." 269 Md. at 520, 307 A.2d 682.

The facts before us indicate conduct involving misappropriation of funds, dishonesty, and failure to pay over a client's funds to a third party as requested by the client. In addition, the trial judge found that Respondent had failed to act competently, had failed to preserve the identity of his clients' funds, and had charged an excessive fee. No evi-

dence of any compelling extenuating circumstances have been presented.

In fulfilling our duty to protect the public, we conclude that disbarment is the appropriate sanction in this case. It follows that the name of Nathaniel Walter Morehead shall be stricken from the rolls of those entitled to practice law in this State.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSU-ANT TO MARYLAND RULE BV15(c) FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR-NEY GRIEVANCE COMMISSION AGAINST NATHANI-EL WALTER MOREHEAD.